<u>**FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| COMCAST CABLE COMMUNICATIONS, | : | |
| | : | Civ. No. 04-4643(DRD) |
| Plaintiff, | : | |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| NOEL ADUBATO, | : | |
| | : | |
| Defendant. | : | |
| | : | |

Wayne D. Lonstein, Esq.
Lonstein Law Office, P.C.
1 Terrace Hill
P.O. Box 351
Ellenville, New York 12428
        Attorney for Plaintiff

**Debevoise, Senior District Judge**

        Plaintiff, Comcast Cable Communications ("Comcast"), instituted an action against

defendant, Noel Adubato, charging that Adubato purchased and used in his residence a bootleg

cable decoding device in order to intercept and receive cable television programming services

without paying for them.  Comcast sought injunctive relief and damages pursuant to 47 U.S.C.

§605 and 47 U.S.C. §553.  Adubato defaulted and Comcast moved for a judgment of default

which included a demand for damages in the amount of $163,259.60 pursuant to

§605(e)(3)(C)(i)(II).

        The substantial nature of the monetary demand and the fact that the allegations of the

complaint did not appear to support damages in excess of $10,000 under either §605 or §553

prompted further inquiry.  The inquiry disclosed that throughout the District of New Jersey (and perhaps elsewhere in the United States) Comcast has sought relief for the kind of offense charged in this case which is without basis in law or the facts.  In earlier cases in this district the court has been misled into granting default judgments to which Comcast was clearly not entitled.[1]

## I. **Background**[2]

Comcast, an operator of cable television systems which provide upon payment proprietary programming, telecommunications and internet services throughout the United States, is plagued by the proliferation of manufacturers and distributors who sell illegal descramblers or decoders that permit a user to by-pass Comcast's codes and receive free what they should pay for.  Comcast is plagued by a vast number of purchasers of these devices who use them illegally to avoid payment of Comcast's legitimate charges.  Civil liability and criminal penalties are imposed by federal law upon persons who engage in these practices.  47 U.S.C. §553.  Use of so-called "pirate" decoding devices costs Comcast substantial revenues and deprives counties and municipalities of franchise fees.

Comcast is engaging in an aggressive campaign to discourage these practices, identifying manufacturers and distributors of pirate devices, and bringing legal actions against them, and identifying and instituting suit against individuals who purchase pirate devices.  Comcast has

---

[1]  At the hearing on Comcast's motion for a default judgment (which had been adjourned to permit the court to obtain a fuller record), Comcast's attorney, Wayne D. Lonstein, Esq., agreed to amend his more than 200 New Jersey pleadings and ensure that the improperly obtained default judgments were vacated.

[2]  The information set forth in this opinion is derived from Comcast's submissions in this and other cases in this district and from counsel's representations at the hearing on the motion for default judgment.

retained Secure Signals International ("SSI") to provide consulting and signal services throughout the United States.  When SSI identifies a manufacturer, distributor or retailer of illegal decoders, it obtains a court order to seize the seller's records.  From the records SSI discovers the names and addresses of persons who purchased illegal decoders from the sellers.

SSI turns over these names and addresses and pertinent information derived from the records to Wayne D. Lonstein, Esq., whose assignment it is to institute legal proceedings against the offending purchasers throughout the United States.  Some of the defendants answer and their cases can proceed in the normal course with counsel representing the defendants.  In many cases defendants do not answer.  In those cases Comcast seeks default judgments.  When a default judgment is obtained, Comcast's attorney seeks to locate the defendant's assets - be it real estate or salary or other form of property.  Upon locating assets the attorney turns the matter over to an agency for collection.  This would be unobjectionable if the defendant were not being pursued for an amount vastly in excess of his statutory liability.

There are two statutes pursuant to which Comcast has sought relief.  The first is 47 U.S.C. §605.  As will be discussed below, the Courts of Appeals disagree about its availability in cases such as the instant one.  It provides that, with specified exceptions, ". . . no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception. . ."  §605(a).  "Any person aggrieved" within the meaning of the statute "shall include any person with proprietary rights in the intercepted communication . . . including wholesale or retail distributors of satellite cable programming."  §605(d)(6).

In addition to obtaining injunctive relief, an aggrieved party may recover actual damages or, because actual damages are hard to prove, statutory damages:

> (II) the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

§605(e)(C)(i)(II).

Thus a violator of subsection (a) of §605 is subject to statutory damages of $1,000 to $10,000. Of significance in the present case is the provision that provides for damages of $10,000 to $100,000 for each violation of paragraph (4). A violator of paragraph (4) is "[a]ny person who manufacturers, assembles, modifies, imports, exports, sells or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services . . ." §605(e)(4)[3].

There is another circumstance when damages of not more than $100,000 may be awarded under §605:

> (ii) In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

---

[3] Paragraph (4) of subsection (e) is a criminal statute that provides that "[a]ny person who manufactures, assembles, modifies, imports, exports, sells or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in [activity prohibited by subsection (a)] shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both."

4

§605(e)(3)(C)(ii).  It is to be noted, however, that "the term 'private financial gain' shall not include the gain resulting to any individual for the private use in such individual's dwelling unit of any programming for which the individual has not obtained authorization for that use." §605(d)(5).

The second statutory provision under which Comcast has sought relief is 47 U.S.C. §553. It states:

> (1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.
>
> (2) For the purpose of this section, the term "assist in intercepting or receiving" shall include the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for unauthorized reception of any communications service offered over a cable system in violation of subparagraph (1).

47 U.S.C. §553(a).

In addition to authorizing injunctive relief the statute permits an aggrieved party to recover actual damages or, in view of the difficulty in establishing such damages, statutory damages:

> (ii) the party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just.

§553 (c)(3)(A(ii)

Further:

> (B) In any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in

5

its discretion may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $50,000.

Cable companies have sought injunctive and monetary relief under these statutes.  Until recently it had been a common practice in this district to join a distributor or manufacturer and many home users of pirate devices in a single action.  Presumably the home users were purchasers from the distributor or manufacturer who had been identified through the records of the distributor or manufacturer.  The practice of joining all these parties in a single action is no longer permitted, and each must be named a defendant in a separate case.

Whether joined as one of many defendants or named as the sole defendant, homeowners who had purchased pirate devices frequently defaulted.  The attorney for the cable company sought entry of default and thereafter a default judgment.  Until the instant case it had been the invariable experience of the author of this opinion that the attorneys moving for a default judgment sought relief under §553, asking for a permanent injunction and statutory damages between $250 and $10,000 under §553(c)(3)(A)(ii).  In each case there was an attempt to provide a rationale for a particular damages amount between $250 and $10,000 based upon such factors as the length of time the defendant had used the pirate device, the difference between the sums defendant paid for cable television and the estimated amount he would have paid had he purchased the programs he enjoyed illegally, and a sum within the permitted range that might deter him and others from future use of pirate devices.

This fair and reasonable procedure was not followed in the instant case.  Defendant, Noel Adubato, according to the complaint, is an individual residing in West Orange, New Jersey, who used a pirate decoder at his residence to receive and intercept Comcast's cable television

programming services without payment to or authorization from Comcast.  He defaulted.

Comcast's counsel, Mr. Lonstein, sought default judgment in damages of $10,000 pursuant to

§605(e)(3)(C)(i)(II), $100,000 pursuant to §605(e)(3)(C)(i)(II), costs and prejudgment interest as

follows:

| | |
|---|---|
| Principal Amount | $110,000.00 |
| Interest at the rate of 9% from October 19, 1999 through February 24, 2005 | $53,019.60 |
| Costs | |
| Filing fees | $150.00 |
| Process server | $90.00 |
| Total | $163,259.60 |

This extraordinarily large damages request suggested further inquiry.

## II.  **The Proceedings**

The complaint, to put it mildly, is inartfully drawn.  It appears to be a revised version of a

form of complaint used when Comcast joined in a single action the manufacturer or distributor of

the pirate decoder along with a large number of homeowners who had purchased from the

manufacturer or distributor.

The instant complaint named only a single residential purchaser who "used the 'pirate'

converter-decoder and descrambling [device] obtained from Modern Electronics, Inc. at [his]

residence to receive and intercept Plaintiff's cable television programming services without

Plaintiff's authorization" (Compl. para 21)[4]

The complaint charges that defendant "has conspired with Modern Electronics, Inc., a manufacturer and distributor of 'pirate' cable television devices, to obtain and use cable television decoding devices which enabled Defendant to intercept Plaintiff's programming services without authority.  The conduct of each of the Defendants (sic) is in direct violation of 47 U.S.C. §605(a) and §553(a)(1)" (Compl. para 1).  Nowhere in the complaint or in the affidavits supporting the request for a default judgment is there any allegation which would support the charge of a conspiracy between defendant and Modern Electronics.  A single purchase of pirate decoding device can hardly constitute a conspiracy.

Plaintiff alleges that "[t]he defendants (sic) have (sic) engaged in the unauthorized reception of Plaintiff's programming services for the purposes of their (sic) private financial gain and has acted at all time willfully and deliberately."  (Comp. para 23 and para 28).  Nowhere in the complaint or in the affidavits supporting the request for a default judgment is there any allegation which would support the charge that defendant acted for the purposes of his financial gain.  The complaint seeks damages under both §553 and §605.

Defendant defaulted.  Comcast moved for entry of default and default judgment.  Its attorney, Mr. Lonstein, submitted an affidavit in support of the motion.  In his affidavit he stated that Comcast "is entitled to damages for Defendant's intentional unlawful interception of Plaintiff's television service in violation of 47 U.S.C. §605(a) in an amount up to the statutory maximum of $10,000, pursuant to 47 U.S.C. §605(e)(3)(C)(i)(II), and for Defendant's violation

---

[4]  Although this muddled complaint names only one defendant, it repeatedly refers to "defendants", plural, or "each defendant."  Thus in the above quotation "device" is substituted for "devices" and "his" is substituted for "their."

of 47 U.S.C. §605 (a)(4).  Plaintiff seeks damages pursuant to 47 U.S.C. §605(e)(3)(C)(i)(II) in

an amount up to the statutory maximum of $100,000.00 plus full costs . . . and prejudgment

interest."  (Aff. para 10).

It will be assumed for the moment that §605 is applicable to the circumstances of this

case.  If it were, the request for $10,000 would be authorized under §605(e)(3)(C)(i)(II) which

allows for statutory damages for a violation of §605(a) of a sum not less than $1,000 or more

than $10,000.

The provision allows statutory damages of not less than $10,000 or more than $100,000

only if Comcast establishes that defendant is a "person who manufacturer, assembles, modifies,

imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment,

knowing or having reason to know that the device or equipment is primarily of assistance in the

unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is

intended for any other activity prohibited by subsection (a) of this section."  There is nothing in

the record, other than Mr. Lonstein's sworn statement that Comcast is entitled to recovery of

$100,000, to support any claim that defendant engaged in any of these kinds of activities.  Other

than claiming damages on account of such activities the complaint alleges no more than that

defendant purchased a pirate decoder for use in his home.

Comcast filed its motion for a default judgment on February 24, 2005.  The court has now

learned that on February 8, 2005, another judge in this district, addressing a Comcast motion for

a default judgment based on paragraph 4, issued an opinion in which he stated: "Plaintiff has not,

however, pleaded a violation of paragraph 4 of subsection (e) . . . The factual averments

contained in Plaintiff's complaint cannot fairly be read to substantiate such a claim.  Instead, the

complaint is limited to a claim for the <u>use</u> by Defendant of a pirate device which constitute a single violation of subsection (a) of 47 U.S.C. §605." <u>Comcast Cable Communications v. Irvin Dorris</u>, Civil No. 04-3587 (D.N.J. 2004).

The complaints in <u>Dorris</u> and the instant action are virtually the same.  Nevertheless, ignoring the opinion in <u>Dorris</u>, Comcast sought subsection (e)(4) damages in this court failing to advise the court of the <u>Dorris</u> opinion.

Comcast's papers raised a serious concern that it was seeking substantial damages against a defaulting, and therefore unrepresented, defendant which are unsupportable both as a matter of law and on the facts.  Consequently the court adjourned the hearing and asked Mr. Lonstein to answer a series of questions:

1.  In what way do the facts alleged in the complaint constitute a violation of §605(a), rather than simply a violation of §553(a)?

2.  What allegations or evidence support the charge that defendant engaged in a conspiracy with Modern Electronics?

3.  What facts are alleged or established by affidavit to support the claim that "Defendants (sic) violated the Communications Act willfully and for the purposes of these (sic) financial gain?"

4.  In what way is it alleged in the complaint or established by affidavit that defendant manufactured, assembled, modified, imported, exported, sold or distributed any electronic device or equipment and, if so, that he had the requisite knowledge of its improper purpose?

Mr. Lonstein's letter response to these questions did little to dispel the court's concern that Comcast was seeking to obtain a judgment far in excess of any amount to which it was

entitled.  In response to the question about the applicability of §605 he stated:

> Please be advised that at the time the complaint was filed recovery under both 47 U.S.C. Sec. 605 and 47 U.S.C. Sec. 553 was available in this type of case.  In most jurisdictions this is still the case.  However, in the District of New Jersey, recent decisions have begun limiting recoveries in cases similar to Defendant Adubato to 47 U.S.C. Sec. 553.  Accordingly, Plaintiff is filing the attached Voluntary Partial Dismissal dismissing claims under 46 U.S.C. Sec. 605.
>
> Recoveries under Sec. 605 are still available in other jurisdictions.  Indeed this office has obtained such recoveries in cases in New Jersey.  The following is a list of recent cases in which recoveries were over $100,000: 2:04-cv-1622, 2:04-cv-2003, 04-cv-3389, 04-cv-3387.

While §605 is available for relief in this kind of case in the Second Circuit, International Cablevision, Inc. v. Sykes, 75 F.3d 123 (2d Cir. 1996), in 2001 in a thorough, exhaustively researched opinion the Court of Appeals for the Third Circuit held that "a cable television descrambler does not facilitate the interception of 'communications by radio' and therefore the statutory damages available under §605 do not apply here," TKR Cable Company v. Cable City Corporation, 267 F.3d 196, 197 (3d Cir. 2001) and, further, "we believe that both the historical context of these statutes and the expressed intent of Congress support our reading of §553 as the exclusive means of addressing defendants' conduct." Id. at 206.

Comcast's complaint in this case was filed on September 23, 2004.  The Court of Appeals decision had been on the books since 2001.  Mr. Lonstein's statement that "at the time the complaint was filed recovery under both 47 U.S.C. Sec. 605 and 47 U.S.C. §553 was available in this type of case" but that "in the District of New Jersey recent decisions have begun limiting recoveries in cases similar to Defendant Adubato to 47 U.S.C. §533" is the ultimate in obfuscation.  It is inconceivable that he and Comcast were unaware of the law in this Circuit when he filed this complaint.

11

The court pressed Mr. Lonstein in a second letter asking for copies of any written opinions of which he was aware that dealt with the applicability of §605 to purchasers of pirate decoders for residential use.  He sent copies of several default judgments in this district which relied on §605 without opinion, a copy of the Dorris opinion which relied on §605 but awarded damages ($5000 statutory damages, $240 costs and $787.50 attorneys' fees) which would have been recoverable in any event under §553, and a number of Court of Appeals and district court opinions from the Second Circuit.  Strangely he did not include a copy of the controlling Third Circuit Court of Appeals decision in TKR Cable Company which holds that §605 does not provide a remedy for offenses involving cable decoding equipment.

Even more disturbing is the fact that even if §605 remedies were available, Comcast is seeking damages under §605 to which it is clearly not entitled, as the court noted in the Dorris case.  On the facts as alleged in the complaint the only monetary damages to which it would be entitled under §605 is a sum of not less than $1,000 or more than $10,000 plus costs and attorneys' fees.  There is absolutely no basis for an award of $100,000 which can be sought only against a person who manufactures, assembles, modifies, imports, exports, sells or distributes an illegal decoder.

During the course of these proceedings Mr. Lonstein brought to the attention of the court seven cases in this district in which the court granted default judgment relying upon his papers asserting that he was entitled to damages under §605 and seeking judgment in excess of $100,000.  He referred to these cases to justify Comcast's demand for the excess $100,000 damages.  The complaint in each of those cases was essentially the same as the complaint in the instant case.  The cases were:

| Case No. | Defendant | Date Complaint Filed | Date of Judgment | Amount of Judgment |
|---|---|---|---|---|
| 04-cv-01622 | Adewale Odugbesan | 4/06/04 | 7/29/04 | $143,733.20 |
| 04-cv-02003 | Catherine Kolo | 4/29/04 | 9/17/04 | $133,400.48 |
| 04-cv-03389 | George Jenkins | 7/19/04 | 2/10/05 | $145,631.60 |
| 04-cv-03387 | Evian Winokur | 7/19/04 | 2/10/05 | $135,759.92 |
| 04-cv-04636 | William Frye | 9/23/04 | 2/15/05 | $50,240.00 |
| 04-cv-03734 | Robert Petrossian | 8/05/04 | 3/02/05 | $56,540.00 |
| 04-cv-03587 | Irvin Dorris | 7/26/04 | 2/08/05 2/16/05 | $5,000; $240 costs $787.50 Atty fees. |

As stated above, the complaint in each of these actions mirrors the complaint in the instant case, including the references to defendants when only one defendant is named. Each complaint charges the named defendant with conspiracy with the manufacturer and distributor of the pirate decoding device. Each complaint seeks damages under §605 on the basis that the defendant was a person who manufactured, assembled, modified, imported, exported, sold or distributed electronic, mechanical or other devices or equipment knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services.

In order to extricate himself and Comcast from the pit which they had dug for themselves, Mr. Lonstein stated that "Plaintiff voluntarily withdraws all allegations of violations of 47 U.S.C. Sec. 605", and "Plaintiff intends to seek damages under Sec. 553 only in this matter."

Comcast did not give up easily. Recognizing that its request for damages well in excess

of $100,000 is not supported by either the law or the facts, Mr. Lonstein's letter asserted that it is

entitled to damages in excess of $50,000 under §553.  Section 553(c)(3)(B) provides that "[i]n

any case in which the court finds that the violation was committed willfully and for the purpose

of commercial advantage or private financial gain, the court in its discretion may increase the

award of damages, whether actual or statutory under subparagraph (A), by an amount of not more

than $50,000."

Mr. Lonstein states in his letter, "[t]he allegation is that we can prove [defendant]

purchased a single pirate device for illegal decoding our client's signal."  There is no evidence

that defendant's violation was for purposes of commercial advantage or private financial gain.  If

the court were to accept Mr. Lonstein's contention that in residential cases the individual has

personally realized a gain by obtaining for free that which others pay for there would be no

purchase that was not subject to §553(c)(3)(B) and §553(c)(3)(A) would be superfluous.

Comcast, frustrated by the proliferation of pirate decoders wishes to make the individual

defendant atone for all the damage caused by the many thieves who remain uncaught.  As Mr.

Lonstein stated in his letter, "Plaintiff seeks a judgment for enhanced damages in part as a

deterrent to future seekers of pirate devices for stealing cable transmissions.  The aggregate

injury suffered by Plaintiff is far beyond what Plaintiff prays for in this case, and not every cable

thief can be brought to justice."

On April 25, 2005 the court held a hearing on Comcast's motion for a judgment of

default at which the circumstances of this and other cases were further developed.

### III.  <u>Discussion</u>

Comcast's pre-hearing revision of the complaint resulted in allegations that in violation of

14

47 U.S.C. §553(a)(1) defendant Noel Adubato purchased and installed in his residence an illegal cable decoding device which he used to receive Comcast's programs without paying for them and without Comcast's authorization.  Defendant was duly served; he failed to answer; and pursuant to Fed. R. Civ. P. 55(a) default was entered against him.

Because the judgment sought is not for a sum certain application for a judgment of default must be made to the court.  Under the facts as revised Comcast would, under normal circumstances, be entitled under §553(c) to: i) a final injunction to restrain further violations of subsection (a)(1); ii) where, as here, Comcast does not prove actual damages, statutory damages of not less than $250 or more than $10,000 as the court considers just; and iii) costs, including a reasonable award of attorneys' fees.  And that is all.

In the present case Comcast sought at the hearing on its motion additional damages in an amount of not more than $50,000 pursuant to §553(c)(3)(B) which provides that "[i]n any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory under subparagraph (A) by an amount of not more than $50,000."

 The court concludes that this demand was a continuation of Comcast's efforts to obtain unauthorized, excessive and oppressive damages against a defaulting defendant.  In his March 30, 2005 letter Comcast's counsel makes the insupportable argument that because "Sec. 605(d)(5) specifically states that 'private financial gain' shall not include the gain resulting from private use in such individual's dwelling" and "Sec 553 does not contain that language," somehow under §553 private use in a dwelling is for private financial gain.  The gain, according to Mr. Lonstein, is "obtaining for free that which others pay for."  If that were the correct

15

interpretation of the statute a cable company would be entitled to enhanced damages of up to $50,000 for every violation of §553(a).

To be entitled to enhanced damages under §553(c)(3)(B), a cable company must allege facts showing that the defendant either used the illegal device to further some commercial venture or profited in some way from the device beyond simply sitting by himself or with his family and friends around a television set using the illegal device to watch programs for which payment should have been made.  Comcast is not entitled to §553(c)(3)(B) enhanced damages.

If this case had been processed in a normal, appropriate way it would have been a very simple matter for the court to review the papers submitted on the request for a judgment of default and sign the judgment for permanent injunction, statutory damages between $250 and $10,000 and costs and attorneys' fees.  However, the circumstances of this case are such that the court must decide whether Comcast is entitled to any relief.

Here Comcast and its counsel have attempted to hornswoggle the court in a number of ways.

First, Comcast sought $100,000 additional damages on the basis of a statute which in 2001 the Court of Appeals had held was inapplicable to the offense with which defendant was charged.

Second, in order to bring itself within the provisions under the inapplicable statute which provided for $100,000 additional damages, Comcast advanced two allegations for which it had absolutely no factual basis either at the time it filed its complaint or at the time it filed its motion for a default judgment.  It alleged without a factual basis that defendant "has conspired with Modern Electronics, Inc., a manufacturer and distributor of 'pirate cable television decoding

16

devices," and it alleged without a factual basis both in its complaint and in an affidavit supporting its motion for a default judgment that Comcast is entitled to damages "for Defendant's violation of 47 U.S.C. §605(a)(4)," i.e., that defendant was a person who manufactures, assembles, modifies, imports, sells, or distributes" illegal decoding devices.

Third, after Comcast revised its application for default judgment to seek relief under §553, in order to bring itself within the provision of that statute which provides for $50,000 additional damages, it advanced an allegation for which it had absolutely no factual basis, namely, that defendant committed the violation for purposes of commercial advantage or private financial gain.

The inapplicability of §605 to this kind of case and Comcast's failure to advise the court of its inapplicability is discussed above.  For purposes of determining what relief Comcast is entitled to, further commentary upon its treatment of the facts is in order.

As in each of the similar cases in this district referred to above, Comcast alleged that the defendant "has conspired with MODERN ELECTRONICS, INC., a manufacturer and distributor of 'pirate' cable television decoding devices."  When asked what evidence he had to support this allegation, Mr. Lonstein stated in his second letter to the court "Modern Electronics advertisements included a 'finders fee' for referring other customers and volume discounts. Thus, any purchaser could easily become a dealer or an agent of the company."  When asked if he was aware of any facts to suggest that defendant took a finder's fee from Modern Electronics or became its agent, Mr. Lonstein stated he was aware of none.  Nor was he aware of any such facts to support on allegation that any of the seven defendants listed above against whom he had obtained default judgments in other cases had conspired with Modern Electronics.  Of the more

than 200 defendants Comcast has sued in New Jersey, Mr. Lonstein could point to only two who had involvement beyond using the illegal decoder in his or her home - a person in South Jersey who sold 96 illegal devices to a person or persons in Portugal and a car wash where illegal devices were being sold for cash.  He also stated that in two cases there was evidence that a purchaser had acquired three or four illegal devices.  Thus when the complaint was filed and at the time the motion for default judgment was filed there was no evidence to support the claim that this defendant conspired with Modern Electronics.

At the time when Comcast filed its complaint and when it filed its motion for a default judgment it asserted that it was entitled under §605 to the $100,000 additional damages on the basis that defendant was a person who manufactured, assembled, modified, imported, exported, sold or distributed electronics, mechanical or other illegal decoding device or equipment.  At the hearing Mr. Lonstein could point to no evidence that defendant, or any of the defendants in the seven cases cited above in which Comcast had sought (and obtained in six of them) a default judgment for additional damages under §605, had engaged in such conduct.  At the hearing Mr. Lonstein argued that attaching the illegal cable decoder to a television set constitutes "modifying" within the meaning of paragraph (4) of subsection (e).  That construction is untenable.  Such a meaning would be totally out of character with the words with which it is associated - "manufactures," "assembles," "imports," "exports," "sells," "distributes."  It is unlikely that Congress would impose paragraph (4) criminal penalties upon a person who simply installs an illegal decoder in a home television set - a fine of not more than $500,000 and imprisonment of not more than five years or both.  Further, the interpretation for which Mr. Lonstein argued would render superfluous the portion of section (e)(3)(C)(II) which provides for

statutory damages of not less than $1000 or more than $10,000.

In response to the Court's first letter of inquiry Comcast shifted ground and sought relief under §553, stating "[Comcast] asks for an increase in damages under Sec. 553(c)(3)(B) for willful violation for the purposes of private financial gain." At the hearing Mr. Lonstein could point to no evidence that defendant acted for purposes of commercial advantage or private financial gain except to repeat the argument set forth in his letter that "the individual has purposely realized a gain by obtaining for free that which others pay for." The hollowness of that argument has already been discussed.

In its zeal to eliminate distribution and use of illegal decoding devices, Comcast has departed from the role of victim of illegal conduct and has assumed the role of victimizer. In New Jersey, and perhaps elsewhere in the United States, it has filed complaints against residential purchasers and users of illegal decoding devices, complaints that, without any basis in fact, allege that Comcast is entitled to additional damages of $100,000 under §605 or, if challenged, to additional damages of $50,000 under §553. Congress has provided civil remedies for this kind of offense which are proportionate to the nature of the offense and to the kind of persons who are likely to commit such offense, specifically statutory damages of $250 to $10,000 in the discretion of the court.

The persons who commit this kind of offense are likely to be of medium or modest means. The towns from which come the defendants listed above against whom Comcast has obtained §605 additional damages are Irvington (one of Essex County's most poverty stricken communities), Vauxhall (a humble working class section), Williamstown, Turnersville, Montclair, Rutherford, and Pleasantville. The judgments against these defendants (with the

19

exception of the <u>Dorris</u> case) ranged from $50,240 to $145,631.60. It is Comcast's practice to locate the assets of such defendants and pursue them.  Should any own a home, when he or she tries to sell it, a huge judgment will confront him.  Should any work, garnishment of wages faces him.  In view of recent amendments to the Bankruptcy Code even escape through bankruptcy is problematical.

By way of hypothetical example: Mrs. Catherine Kole and her husband of Vauxhall have worked all their lives, paying off the mortgage on their modest home.  When they retire they decide to sell their home and use the net proceeds of $90,000 to $100,000 to provide for their old age.  When the time comes to close the sale they are informed that they have no equity; the title search disclosed that on September 17, 2004 Comcast obtained a judgment of $133,400.48 on which interest had been accruing during the intervening years.  The fact that the judgment entered many years previously was unlawfully obtained will be of no comfort to the Koles.

What is particularly disturbing is the role that counsel is playing in obtaining these default judgments.  The court is accustomed to relying upon the attorneys who appear before them, and rarely is that reliance misplaced.  Particularly where, as here, a defendant is unrepresented, an attorney must ensure that a judge is fully advised of the applicable law and that no allegations are advanced that are not fully supported by reliable evidence.  Just because a defendant defaults he does not become an outlaw - a person outside the protections of the law.  Comcast's attorney did not meet his obligations to the court in this case.

At the conclusion of the hearing on Comcast's motion for a default judgment Mr. Lonstein represented that he had already commenced amending his pleadings in the two hundred or more cases pending in New Jersey and that he would take steps to vacate the default

20

judgments based on §605.  The minimal steps that I understand Mr. Lonstein and Comcast to have agreed to take in the New Jersey cases are: i) amend all pleadings and motions to eliminate all requests for relief under §605; ii) amend all pleadings and motions which request relief under §553 to eliminate a demand for additional damages under §553(c)(3)(B) unless there is a good faith basis in the evidence to believe that the defendant committed the violation willfully <u>and</u> for purposes of commercial advantage or private financial gain (as "personal financial gain" is defined in this opinion); iii) amend all pleadings and motions that allege that the defendant conspired with the manufacturer or distributor of the illegal decoding device unless there is a good faith basis in the evidence to believe that the defendant engaged in such a conspiracy beyond merely purchasing the illegal device and iv) take all steps necessary to vacate the default judgments obtained in New Jersey on the bases of §605(e)(4) or §553(c)(B).  If Comcast or Mr. Lonstein disagree with my understanding of their commitment they should move promptly for clarification.

## IV.  <u>Conclusion</u>

Defendant has not denied that he purchased and used an illegal decoder, and there is evidence in the form of a purchase slip that he did so, subjecting himself to §553(c)(2) and (3)(A)(ii) relief.  A default judgment granting a final injunction enjoining further illegal use of a decoder will be entered.  However, in view of Comcast's and its attorney's conduct in this case it

would be unconscionable to allow any additional relief, and consequently the demand for damages and costs will be denied.  Obviously no attorneys' fees will be awarded.  The court will file an appropriate order.


Dated: April 28, 2005                                      ___/s/ Dickinson R. Debevoise___
                                                           DICKINSON R. DEBEVOISE
                                                                  U.S.D.J.